UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KECITE RENEE SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1998** |
| **OFFICER FONITNO, ET AL.** | **SECTION: "M"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Kecite Renee Smith, a state pretrial detainee, filed this *pro se* federal civil action pursuant to 42 U.S.C. § 1983. In this lawsuit, she asserts claims arising out of three incidents: (1) her restraint on a "cool down" bench following an altercation with inmate Olivia Green on August 9, 2024; (2) the jail showers being unavailable on August 8 and 9, 2024; and (3) events concerning inmate Jacquelan Davenport.

Federal law requires that this matter be screened. For example, with respect to actions, such as this one, which are filed *in forma pauperis*, federal law mandates:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)   is frivolous or malicious;
> (ii)  fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because plaintiff is incarcerated, screening is also required by 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[1]  Regarding such lawsuits, the statute similarly provides:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A claim is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  When making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (footnote, citation, and quotation marks omitted).

---

[1] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

2

For the following reasons, even when plaintiff's complaint is liberally construed,[2] her federal civil rights claims should be dismissed as frivolous and/or failing to state a claim on which relief may be granted.

As noted, plaintiff brought this lawsuit pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Here, as explained below, plaintiff's claims fail on one or both of those prongs.

### Claims Arising from Plaintiff's Restraint on a "Cool Down" Bench

With respect to her claims arising from her restraint on a "cool down" bench, plaintiff makes the following allegations:

On August 9, 2024, plaintiff was involved in a verbal altercation with inmate Olivia Green, who pressed a call button to summon jail officers. In response to that call for assistance, Officer Beals told Officer Fonitno to remove plaintiff from the dorm. Fonitno did so, and she handcuffed plaintiff to a "cool down" bench "for no reason."[3] Plaintiff opines that this was unfair, because: (1) by the time Fonitno entered the dorm, the altercation had ceased, and plaintiff "was on [her]

---

[2] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).
[3] Rec. Doc. 1, p. 6.

bed, not fussing with Olivia Green or nothing";[4] and (2) Fonitno "show[ed] favortism [sic] and singl[ed plaintiff] out"[5] because Green was not similarly placed on a "cool down" bench.

When plaintiff was then released from the bench after approximately two hours, she returned to the dorm and found that the legal paperwork and food she had left on her bed were missing. When plaintiff reported the missing items, Fonitno responded by again restraining her on the "cool down" bench for an additional two to three hours.

Plaintiff alleges that Fonitno "had to get approval from Corp Vanhulan [sic] to place me on the bench both times …."[6]

Lastly, plaintiff alleges that Green subsequently admitted to Fonitno that she had taken the missing items and threw them in the trash. Because the trash had already been taken away, plaintiff was unable to retrieve her property. Plaintiff complains that Green was not punished for her actions.

As an initial matter, the Court notes that plaintiff named Green herself as a defendant in this § 1983 action. However, that is clearly improper, because "[n]umerous cases have held that an inmate is not a state actor or a person acting under the color of state law for purposes of stating a claim under § 1983." Goodell v. Anthony, 157 F. Supp. 2d 796, 801 (E.D. Mich. 2001); accord Naquin v. Jack, Civ. Action No. 20-548, 2020 WL 8675909, at *8 (E.D. La. July 16, 2020), adopted, 2021 WL 780750 (E.D. La. Mar. 1, 2021).[7]

---

[4] Id.
[5] Id. at p. 7.
[6] Id. at p. 9.
[7] Of course, it is true that a private individual, such as an inmate, can be held liable under § 1983 for engaging in a conspiracy with state actors. See Mills v. Criminal District Court # 3, 837 F.2d 677, 679 (5th Cir. 1988); see also Mowbray v. Cameron County, 274 F.3d 269, 278 (5th Cir. 2001) ("[I]t is possible, in limited circumstances, to allege a § 1983 conspiracy claim against a private actor...."). Here, however, plaintiff does not allege that Green conspired with one or more jail officials to harm her. Further, even if plaintiff's complaint were broadly construed as containing an implicit allegation of that nature, her claim would still fail because conclusory allegations of conspiracy simply will not suffice. Priester v. Lowndes County, 354 F.3d 414, 423 n.9 (5th Cir. 2004) ("The allegation of a conspiracy

Next, to the extent that plaintiff is claiming that jail officials violated her constitutional rights by twice restraining her to the "cool down" bench, those claims are meritless. It is true that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979). But "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Id. at 537. Rather:

> Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

Id.

Therefore, "in determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word[,] [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. at 538. Further, the Supreme Court has explained:

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer

---

between private and state actors requires more than conclusory statements."); Lafleur v. City of Westwego, Civ. Action No. 10-363, 2011 WL 802612, at *4 (E.D. La. Feb. 28, 2011).

> that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

Id. at 538-39 (footnotes, citations, internal quotation marks, and brackets omitted).

In the instant case, there is no allegation that jail officials expressed an intent to punish plaintiff. In addition, it is evident that plaintiff's restraint on the "cool down" bench was reasonably related to a legitimate government objective, namely, the maintenance of order within the jail. By her own admission, jail officials were summoned to the dorm because plaintiff was engaged in a verbal altercation with Green. Therefore, the decision to separate plaintiff and Green was a reasonable one, and the initial decision to restrain plaintiff on the bench for a brief period of time to "cool down" to restore order was not an excessive restriction. Further, once plaintiff was released and realized that her property had been stolen while she was restrained, that could have served to reignite the situation. Accordingly, it was not unreasonable to remove and briefly restrain her once again to prevent that from occurring.[8]

In summary, although plaintiff opines that her restraint was both (1) a form of punishment and (2) "for no apparent reason at all," neither is accurate. There is simply no evidence that jail officials placed plaintiff on the bench to "punish" her, and a reason for their action was in fact readily apparent: to remove her from the dorm to ensure that her verbal altercation did not escalate into something more serious. "Obviously, such confrontations between inmates pose security concerns at a jail, and jail officials are therefore allowed to take action to protect institutional security *even when the actions adversely affect a pretrial detainee*." Walcott v. Terrebonne Parish

---

[8] In any event, it must also be remembered that "'[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" Bell, 441 U.S. at 539 n.21 (quoting Ingraham v. Wright, 430 U.S. 651, 674 (1977)). Restraining plaintiff to a "cool down" bench for a few hours after an altercation is a *de minimis* restriction that does not amount to punishment, particularly where, as here, she has not alleged that direct harm, or a risk of harm, resulted.

Consolidated Government, Civ. Action No. 17-1125, 2017 WL 6374640, at *8 (E.D. La. Sept. 22, 2017) (emphasis in original), adopted, 2017 WL 6344148 (E.D. La. Dec. 12, 2017).

To the extent that plaintiff is perhaps suggesting that the course chosen by the jail authorities to achieve that legitimate governmental objective was not the "best" or "fairest" one available, a federal court normally should not weigh in on such issues. On the contrary, the Supreme Court has cautioned:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

Bell, 441 U.S. at 540 n.23 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)); see also Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015) ("[T]he judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences."). The question for a federal court is only whether the course chosen was a reasonable one; here, it was.

To the extent that plaintiff is attempting to sue jail officials for not punishing Green, such claims are not cognizable under § 1983. While it is perhaps true that Green should have been punished for stealing and destroying plaintiff's property, the fact that jail officials failed to do so is not actionable. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990) (noting that an individual "does not have a constitutional right to have someone criminally prosecuted"); Baughn v. Sanders, Civ. Action No. 6:21cv258, 2021 WL 6880687, at *3 (E.D. Tex. Dec. 8, 2021) (rejecting an inmate's claim that his rights were

violated when jail officials failed to report or take action after other inmates restrained him, noting that "citizens do not have any constitutional right to have another individual disciplined or prosecuted"), adopted, 2022 WL 407375 (E.D. Tex. Feb. 9, 2022).

Lastly, to the extent that plaintiff is perhaps attempting to sue jail officials for the loss of her property, that claim likewise is not actionable here. That is so because "[t]he Due Process Clause is not implicated by a state official's negligent act causing unintended loss of property, and even intentional destruction of an inmate's property does not raise a constitutional claim if an adequate post-deprivation remedy exists." Simmons v. Poppell, 837 F.2d 1243, 1244 (5th Cir. 1988) (citing Daniels v. Williams, 474 U.S. 327 (1986) and Hudson v. Palmer, 468 U.S. 517 (1984)). It is beyond cavil that "Louisiana provides an adequate tort postdeprivation remedy for procedural due-process claims relating to negligent or intentional property loss claims by inmates." Gross v. Normand, 576 F. App'x 318, 320 (5th Cir. 2014) (citing Marshall v. Norwood, 741 F.2d 761, 763-64 (5th Cir. 1984), and La. Civ. Code Ann. art. 2315). Therefore, plaintiff's property claim does not allege a constitutional violation and, thus, does not have an arguable basis in law.

## Claims Concerning the Showers

Plaintiff alleges that the jail showers are only functional at certain times of the day. She further alleges that the showers in her dorm were not functional on August 8 and 9, 2024, "because security in maintance [sic] department didnt [sic] cut showers on."[9] As a result, the inmates in that dorm were unable to shower for those two days.

However, even if plaintiff's allegations are true, her claim is meritless because such a brief unavailability of showers does not rise to the level of a constitutional violation. Simply put: "The Constitution … does not require daily or even weekly showers for pretrial detainees." Brown v.

---

[9] Rec. Doc. 1, p. 16.

Turlich, Civ. Action No. 24-0725, 2024 WL 3799485, at *5 (E.D. La. June 17, 2024), adopted, 2024 WL 3791242 (E.D. La. Aug. 13, 2024); accord Young v. Ledet, Civ. Action No. 20-2165, 2021 WL 799683, at *21 & n.107 (E.D. La. Jan. 15, 2021), adopted, 2021 WL 795981 (E.D. La. Mar. 2, 2021).

### Claims Concerning Jacquelan Davenport

Finally, as she also complained in another lawsuit recently filed in this Court, plaintiff alleges that inmate Jacquelan Davenport, in her role as a jail trustee, is allowed to be in contact with plaintiff despite the fact that "Davenport has a prea on [plaintiff] at this jail …."[10] Plaintiff also alleges that Davenport does not always wear a "state issue uniform," despite the fact that inmates are required to do so.[11] Plaintiff further alleges that jail officials have failed to answer her numerous grievances concerning Davenport, her presence in plaintiff's dorm, and the fact that Davenport, as part of her trustee duties, has "physical contact with [plaintiff's] food and laundry on a daily basis."[12]

With respect to these allegations, plaintiff has named Davenport herself as a defendant in this lawsuit. However, as already explained *supra*, an inmate is not a proper § 1983 defendant, because inmates are not state actors. Goodell v. Anthony, 157 F. Supp. 2d 796, 801 (E.D. Mich. 2001); accord Naquin v. Jack, Civ. Action No. 20-548, 2020 WL 8675909, at *8 (E.D. La. July 16, 2020), adopted, 2021 WL 780750 (E.D. La. Mar. 1, 2021). That is true even with respect to

---

[10] PREA is an acronym for the Prison Rape Elimination Act. See 34 U.S.C. §§ 30301-09. The undersigned notes that several of the claims concerning Davenport were also asserted in Smith v. Atkins, Civ. Action No. 24-2104. Asserting the same claims in more than one lawsuit is improper, and, indeed, a complaint is considered legally "malicious" if a plaintiff asserts in a new lawsuit against the same or different defendants virtually identical causes of action "arising from the same series of events and alleging many of the same facts as an **earlier** suit." Bailey v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988) (emphasis added). However, although the instant case was only recently opened after plaintiff finally corrected the defects in her pauper application, it was in fact filed **before** Civ. Action No. 24-2104. Therefore, out of an abundance of caution, the undersigned declines to recommend that the claims concerning Davenport in this lawsuit be dismissed as "malicious."
[11] Rec. Doc. 1, p. 17.
[12] Id. at p. 16.

inmates, such as Davenport, who serve as jail trustees. See, e.g., Simon v. Larpenter, Civ. Action No. 20-1854, 2020 WL 9349528, at *6 (E.D. La. Nov. 10, 2020) ("Because Simon fails to allege facts establishing that the inmate trusty workers are state actors, his § 1983 claims against them have no basis in federal law, and are therefore frivolous."), adopted, 2021 WL 1614813 (E.D. La. Apr. 26, 2021).

Further, to the extent that plaintiff is complaining that jail officials should not allow Davenport to serve as a jail trustee, that simply is not her concern. Whether Davenport serves as a trustee – and whether she is dressed appropriately when she does so – are solely matters for the jail's administrators, not plaintiff.

Lastly, to the extent that plaintiff is claiming that the jail officials are violating her constitutional rights by failing to answer her grievances concerning Davenport, she is incorrect. An inmate has no constitutional right to an adequate and effective grievance procedure or to have her complaints investigated and resolved to her satisfaction. Bonneville v. Basse, 536 F. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 F. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's federal civil rights claims be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 4th day of November, 2024.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**